UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARION ANDRE COMIER | ) | |
| | ) | |
| Petitioner, | ) | No. 1:22-CV-04432 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ANTHONY WILLS, | ) | |
| Warden, Menard Correction Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

In state court, Marion Comier was charged with intentionally setting an apartment building on fire, killing seven people. R.19-1, State Court Op. at 1.[1] At trial, Comier wanted to introduce expert testimony about his mental illnesses to cast doubt on the credibility of his previous admissions to the crimes. *Id.* at 2–3. But the trial court decided that Comier could introduce that evidence only if he also agreed to be interviewed by the State's expert psychiatrist. *Id.* at 5. Comier refused, so his expert's testimony was barred. *Id.* The jury convicted Comier of seven counts of first-degree murder, and he was then sentenced to life in prison. *Id.* at 10.

Comier then appealed his conviction to the Illinois Appellate Court. *Id.* Most relevantly, he argued on appeal that the trial court violated his Fifth and Sixth Amendment rights by conditioning the introduction of his expert's psychological testimony on Comier submitting to an interview with the State's expert. *Id.* The

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

appellate court rejected Comier's arguments and affirmed the trial court's decision. *Id.* at 12–16. Comier now files a petition for writ of habeas corpus, 28 U.S.C. § 2254, arguing that the state appellate court unreasonably applied federal law in concluding that his constitutional rights were not violated by the State-examination condition. R. 1, Habeas Pet.[2] Because Supreme Court precedent clearly forecloses Comier's constitutional arguments, his habeas petition is denied, and a certificate of appealability is also denied.

## I. Background

In Cook County Circuit Court, Marion Comier was charged with intentionally setting fire to an apartment building in Cicero, Illinois, which killed seven people. State Court Op. at 1. The State alleged that Comier set the fire to help the landlord, Lawrence Myers, collect insurance proceeds on the building. *Id.* After the fire, Myers's girlfriend, Bonita Robertson, went to the police and reported that she had heard Myers and Comier plotting to burn the building down and later discussing that they had completed the crime. *Id.* at 6. Robertson then agreed to wear a recording device to capture conversations with Myers and Comier. *Id.* In ensuing recorded conversations, Comier admitted to Robertson that he had set the fire by pouring oil and gasoline on a couch on the apartment building's back porch and lighting it with a match. *Id.* at 7.

In the lead up to his trial, Comier sought to introduce expert testimony from Dr. Bruce Frumkin, a psychiatrist who had examined him. *Id.* at 2. To refute the

---

[2]This Court has jurisdiction under 28 U.S.C. § 2241.

veracity of Comier's own recorded admissions to Robertson, Dr. Frumkin would opine that

> [Comier] is an individual who has eccentric and bizarre thinking, has at times a detachment from reality … and has great difficulty processing emotional events. Sometimes people with serious mental disorders are not accurate in what they say. This may be something the trier of fact might want to consider when evaluating the weight to give to [Comier's] statements to Robertson.

State Court Op. at 2 (cleaned up).[3] Comier wanted to introduce this evidence at trial to challenge the credibility of his own recorded admissions. *Id.* at 2–3. But the State objected to that proposed testimony on the ground that it would be improper commentary on Comier's credibility. *Id.* at 4. The trial court then decided that to maintain fairness and avoid confusing or prejudicing the jury, Dr. Frumkin's testimony would be permitted at trial only if Comier would agree to be interviewed by the State's psychological expert. *Id.* at 5. Comier refused to be interviewed by the State's expert, so the court barred Dr. Frumkin's testimony. *Id.*

At trial, the State's evidence against Comier included his recorded admissions and expert testimony from an arson investigator, who opined that the fire was intentionally started using an accelerant. *Id.* at 6, 8. The jury found Comier guilty of seven counts of first-degree murder, and he was sentenced to life in prison. *Id.* at 10. Comier then appealed to the Illinois Appellate Court. *Id.* He argued that the trial court violated his Fifth and Sixth Amendment rights by conditioning the admission of Dr.

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Frumkin's testimony on Comier submitting to an examination by the State's expert. *Id.* He also contended that the trial court should have barred the State's arson expert's testimony because it lacked a proper scientific basis (though he does not press that claim here in federal court). *Id.* at 15–16. The appellate court rejected both arguments and affirmed Comier's conviction. *Id.* at 12–16. Comier now files a habeas petition, arguing that the Illinois Appellate Court misapplied Supreme Court precedent by holding that the trial court's decision on the admission of Dr. Frumkin's testimony did not violate Comier's constitutional rights. Habeas Pet. at 36–39.

## II. Analysis

Comier contends that habeas relief is proper because the trial court erred by deciding that to introduce Dr. Frumkin's testimony, Comier was required to submit to an interview with the State's psychiatrist. Habeas Pet. at 39. Comier says that this requirement violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to present a complete defense. *Id.* Comier's arguments fail because the trial court's evidentiary decision did not violate the Constitution.

Under the pertinent standard of habeas review, Comier cannot obtain habeas relief unless he establishes that the Appellate Court unreasonably applied Supreme Court precedent or unreasonably determined the facts in light of the evidence. 28 U.S.C. § 2254(d)(1)–(2). It is not enough for this Court to disagree with the state court's decision. Instead, to secure habeas relief, Comier must show that the Illinois Appellate Court's decision was "so lacking in justification" that an error is clear "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S.

4

86, 103 (2011). Comier does not clear that bar.

Although the Sixth Amendment generally provides the accused with the right to present a complete defense, that right is not unlimited. Instead, a trial court may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). Here, the trial court reasoned that although Comier said that he did not intend to present a formal insanity defense, Dr. Frumkin's testimony still would testify that Comier suffers from a mental illness and is at times detached from reality. That testimony still would pose a risk of misleading the jury and could influence the jury's thinking about Comier's culpability and mental state when setting the building fire—not just his mental state at the time of the recorded admissions. State Court Op. at 4–5. So to maintain fairness and ensure that the State had an adequate opportunity to rebut Comier's psychological evidence, the trial court decided that to introduce Dr. Frumkin's testimony, Comier would also have to agree to be interviewed by the State's psychiatrist. *Id.* at 5.

That was a reasonable decision and did not rob Comier of the right to present a defense. Comier cites no clearly established Supreme Court precedent to the contrary. As the state trial court reasoned: Dr. Frumkin's testimony could have misled the jury and colored its thinking about Comier's mental state in committing the alleged arson, rather than merely weighing on the credibility of Comier's recorded admissions. And the trial court did not entirely bar Dr. Frumkin's testimony; the court instead took the more modest step of conditioning introduction of that testimony on

5

Comier being interviewed by the State's expert. That step was not unreasonable and was a proper response to the risk of prejudice and jury confusion posed by the proposed evidence.

Nor did placing that condition on Comier's ability to introduce psychological evidence violate his Fifth Amendment right against self-incrimination. In *Kansas v. Cheever*, 571 U.S. 87 (2013), the Supreme Court explained that fairness and the core truth-seeking function of trials dictate that "[w]hen a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him." *Cheever*, 571 U.S. at 94. Thus, a trial court does not violate the defendant's right against self-incrimination by requiring that the defendant submit to a government-expert examination. Applying that principle here, because Comier sought to introduce testimony from Dr. Frumkin—a psychiatrist who examined him—the State should also be given the opportunity to challenge that evidence with testimony from its own expert who had also examined Comier. State Court Op. at 2. So the trial court properly followed *Cheever* by deciding that Comier could introduce Dr. Frumkin's testimony only if he agreed to be interviewed by the State's expert. *Id.* at 5. In fact, if the trial court had not applied that condition on Dr. Frumkin's testimony, it would have unfairly denied the State the ability to effectively challenge that evidence. The Illinois Appellate Court thus correctly rejected Comier's Fifth and Sixth Amendment arguments, reasoning that the trial court

could "compel the defendant to submit to an examination by a government expert without violating the fifth amendment right against self-incrimination." *Id.* at 13.

Comier counters that the Illinois Appellate Court unreasonably applied Supreme Court precedent because *Cheever* applies only when the defendant seeks to introduce psychological expert testimony in support of an insanity or other mental-status defense. Habeas Pet. at 39. So, according to Comier, *Cheever* does not apply here because he intended to introduce Dr. Frumkin's testimony solely to challenge the credibility of his own recorded admissions. *Id.* at 39–40. That approach reads *Cheever* too narrowly. True, *Cheever* set forth the rule that "where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal." *Cheever*, 571 U.S. at 94. But the Supreme Court's rationale in arriving at that rule reveals that its holding expands (or, at the very least, reasonably expands) beyond situations in which the defendant argues that he lacked the mental state to commit an offense. The Court explained that admitting psychiatric rebuttal testimony "harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer questions on cross-examination." *Id.* at 94. A defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts." *Id.* (cleaned up). So in "determining the scope and limits of the privilege against self-incrimination," the "interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant." *Id.*

7

(cleaned up). In other words, when a defendant chooses to testify, he cannot then use the Fifth Amendment as a shield to protect him from being questioned.

Applying those principles to the context of psychiatric testimony based on an examination of the defendant, if the defendant chooses to introduce psychological testimony from an expert who has examined him, the defendant cannot then use the Fifth Amendment to shield himself from being examined and questioned by a government expert. As the Supreme Court stated, the State may "permissibly follow[] where the defense le[ads]." *Cheever*, 571 U.S. at 95. And there is no reason that the underlying fairness and truth-seeking principles discussed in *Cheever* would be limited only to instances in which psychological evidence is used to argue that the defendant lacked the requisite mens rea to commit the *crime*, rather than on some other disputed fact—like the believability of an admission. Instead, it is reasonable to conclude that the goals of fairness and of arriving at the truth require that when a defendant introduces testimony from a psychologist who has examined him to cast doubt on the credibility of the defendant's admissions, the government must have a chance to examine the defendant with an expert of its own. Thus, the Illinois Appellate Court correctly—or at the very least reasonably—applied *Cheever* to conclude that the trial court did not violate Comier's right against self-incrimination. State Court Op. at 12–14.

Finally, Comier argues that to adequately rebut Dr. Frumkin's testimony, the State could have merely had its expert review Dr. Frumkin's notes from his examination of Comier. Habeas Pet. at 41–44. Thus, Comier contends that the trial court

8

did not need to condition Dr. Frumkin's testimony on the State's expert personally examining Comier. *Id.* But this too was no error. Before the trial court decided that Comier would have to submit to an interview in order to introduce Dr. Frumkin's testimony, the State's expert did attempt to form an opinion based only on reviewing Dr. Frumkin's notes. State Court Op. at 5. But the expert told the trial court that he could not properly evaluate Comier's mental state without personally examining him. *Id.* So the trial court then reasonably decided that the State expert should be permitted to examine Comier. *Id.* And that decision is also supported by Supreme Court precedent. In *Cheever*, the Court expressly stated that the government's "only effective means of challenging" a defendant's evidence from a psychological expert who has examined him is through "testimony from an expert who has also examined him." *Cheever*, 571 U.S. at 94 (cleaned up). Limiting the State's expert to only reviewing Dr. Frumkin's notes would thus have prevented the State from effectively challenging Comier's evidence. Again, the trial court did not err and no constitutional violation occurred. Comier's habeas petition is thus denied.

### III. Conclusion

Comier's petition for writ of habeas corpus, R. 1, is denied. A certificate of appealability is also denied. To obtain a certificate of appealability, Comier must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Comier's constitutional claim here is not a close call. *Cheever* held that when a

defendant introduces evidence through a psychological expert who has examined him, the government must also be allowed to introduce testimony from an expert who has examined the defendant. *Cheever*, 571 U.S. at 94–95. The Illinois Appellate Court's application of that holding to the analogous context here does not come close to an unreasonable application of Supreme Court precedent, whether the right against self-incrimination or the right to present a complete defense. So there is little doubt that the trial court's evidentiary decision did not violate Comier's constitutional rights. Thus, a certificate of appealability is not warranted.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 25, 2025